IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CLAUDE GENE LEE, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:06-CV-874-MHT |
| | ) | |
| WESTPOINT HOME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## EVIDENTIARY SUBMISSION

Defendant WestPoint Home, Inc. ("WPH") submits the following evidentiary materials in support of its Motion for Summary:

1.   Declaration of Brendt Murphy and Exhibits 1-5 attached thereto.

2.   Declaration of Frank Major, III and Exhibits 1-2 attached thereto.

Respectfully submitted this 7th day of June, 2007.

/s/Kelly F. Pate
One of the Attorneys for Defendant WestPoint
Home, Inc.

**OF COUNSEL:**
David R. Boyd (BOY005)
dboyd@balch.com
Kelly F. Pate (FIT014)
kpate@balch.com
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

181678.1

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the AlaFile system which will send notification of such filing and/or that a copy of the foregoing has been served upon the following by placing a copy of same in the United States mail, properly addressed and postage prepaid, on this 7th day of June, 2007:

Jay E. Tidwell, Esq.
Tidwell Law Group, LLC
2112 11th Avenue South, Suite 217
Birmingham, AL 35205

Stephen C. Wallace, Esq.
Dawson & Wallace, LLC
2229 Morris Avenue
Birmingham, AL 35203

Richard E. Crum, Esq.
M. Russ Goodman, Esq.
Cobb, Shealy, Crum, Derrick & Pike, P.A.
206 North Lena Street
Dothan, AL 36303

/s/Kelly F. Pate
Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CLAUDE GENE LEE, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:06-CV-874-MHT |
| | ) | |
| WESTPOINT HOME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DECLARATION OF BRENDT MURPHY</u>**

Pursuant to 28 U.S.C. § 1746, I, Brendt Murphy, certify that the following declaration is based upon my personal knowledge.


1.      I am the Human Resources Manger for the WestPoint Home, Inc. ("WestPoint") Abbeville Plant, at which Mr. Claude Gene Lee worked.  Mr. Lee has been employed continuously since February 7, 1977 with WestPoint and his voluntary termination was effective April 15, 2006.[1]     From 1974 through 2000 he held various hourly paid jobs.  Beginning in March 2000, Mr. Lee served as Third Shift Supervisor of the Packaging Department.

2.      On August 8, 2005, the assets of WestPoint Stevens, Inc., Mr. Lee's original employer, were sold pursuant to section 363 of the bankruptcy code to a new company, WestPoint Home, Inc. name changes on Company policies and other documents were ongoing at the relevant times of Mr. Lee's employment.  References in company documents to WestPoint Stevens, Inc. should be taken to mean WestPoint, Home, Inc.

---

[1] Mr. Lee was previously employed with WestPoint from June 20, 1974 until July 10, 1974.

J81648.1

3.     The Abbeville Plant receives finished sheeting fabric from other WestPoint plants and cuts and sews it into bed products such as flat sheets, fitted sheets, pillowcases, and other related items. The finished products are then sold throughout the home fashions industry.

4.     Following the 2005 asset sale, WestPoint recognized that certain operational changes were necessary for the company to be successful and to become a stronger competitor in the industry. One of the changes, which directly affected the Abbeville Plant, was the transition of all fabrication and distribution functions to Abbeville. In addition, new work methods were introduced. Because of this change, all aspects of the Abbeville Plant operations came under close scrutiny.     All manufacturing processes were reviewed, as were the supervisors and managers charged with implementing the changes. It was very important that WestPoint have supervisors and managers in place who were capable and committed to implementing and enforcing the changes necessary to move the company forward.

5.     With these changes, including new work methods in the Packaging Department, and with all cutting, sewing, and distribution operations for sheeting starting to flow through the Abbeville Plant, it was critical that all shifts and departments operate effectively, incorporate the new methods, and that all supervisors and associates perform at their highest level.

6.     On December 12, 2005, Mr. Lee's poor performance was first addressed when his supervisor and Department Manager, Bob Turner, gave Mr. Lee a personnel notice for his failure to perform key components of his job, such as enforcement of correct work procedures, failure to discipline associates for poor performance, a failure to communicate with other supervisors and his department manager on work-related matters and his overall demonstrated inability to effectively lead his associates and his shift. Attached as Exhibit 1 is a true and correct copy of the December 12, 2005 personnel notice.

7.     On January 25, 2006, Mr. Lee's poor performance and failure to adequately manage his associates was again addressed by Frank Major, a black male who was Mr. Lee's supervisor at the time. Mr. Major completed and discussed with Mr. Lee his annual performance review for 2005.     Mr. Major rated Mr. Lee as "fair" noting his poor performance in supervision/management skills, communication skills, and administration.

8.     Despite these notices of poor performance, Mr. Lee failed to improve. On February 16, 2006, Mr. Lee received another personnel notice from Mr. Major due to poor job performance. Mr. Major noted Mr. Lee's continued failure to monitor associates, to enforce correct work procedures and to communicate with other shift supervisors concerning problems affecting the department.

9.     Again, Mr. Lee failed to improve. On March 8, 2006, then-Department Manager Michael Alford gave Mr. Lee a Corrective-Action Report. Mr. Alford noted, among other things, Mr. Lee's failure to manage his associates. With this, Mr. Alford placed Mr. Lee on notice that immediate improvements were required or he could be removed from supervision. Mr. Lee's performance continued to decline, however, and his immediate removal became necessary. Attached as Exhibit 2 is a true and correct copy of the March 8, 2006 Corrective-Action Report for Mr. Lee.

10.     On March 11, 2006, Mr. Alford realized that Mr. Lee was failing to make any effort to implement changes necessary to address the performance deficiencies for which Mr. Lee was on notice and he discussed this with me.     Attached as Exhibit 3 is a true and correct copy of the March 11, 2006 Corrective-Action Report for Mr. Lee.

11.     I consulted with Director of Human Resources Woodrow Sluss, and we determined, because of Mr. Lee's long employment history with WestPoint, the proper course of

action was to remove him from his supervisory role and to offer to him a non-supervisory position. Interim Plant Manager Glenn McCants approved our recommendation. We offered Mr. Lee the job of Set Order Puller, an hourly position, like others he had held with the company prior to becoming a supervisor. Attached as Exhibit 4 is a true and correct copy of the documentation of Mr. Lee's refusal of the Set Order Puller job.

12. On March 15, 2006, however, Mr. Lee decided that he was not interested in the Set Order Puller job. There were no other positions available to offer Mr. Lee at that time. Accordingly, Mr. Lee's decision to decline the Set Order Puller job was considered a voluntary termination. Mr. Lee was allowed to use his accrued vacation of four weeks after which time his termination became effective on April 15, 2006. Attached as Exhibit 5 is a true and correct copy Mr. Lee's separation notice.

13. During the time following the asset sale when the Abbeville Plant was under close scrutiny and changes were being implemented in the manufacturing processes utilized at the plant, senior management took a close look not only at the manufacturing processes, but also the management in place. No employee of the Abbeville Plant was immune or allowed to remain in his/her position if his/her performance was not acceptable. None of the decisions made were based on race or any factor other than performance. Many decisions regarding supervisors, managers, and other employees were made during this transition period. For example, Mary Bradley, who is black, was promoted to Department Supervisor on December 16, 2006. The Pillow Case Department Manager, who is white, was removed from that position on January 3, 2006, and replaced by William Feggins, a black male. In addition, the Abbeville Plant Manager, a white male, was removed from his position, despite his long employment history having been employed since January 1, 1976, and serving as Plant Manager since March 1, 1992. He was

181648.1                                          4

removed because it was determined that he would not be able to implement the changes necessary to complete the transition plan.

14.    Mr. Billy Wayne Bedsole, who was previously the second shift supervisor, was transferred to third shift supervisor in the Packaging Department subsequent to Mr. Lee's removal from that role. Mr. Bedsole had also been reviewed by Mr. Major in January 2006. He was reviewed as "Meets Requirements." Mr. Mike Ethridge who served as first shift supervisor in the Packaging Department, was moved to third shift supervisor. He, too, was reviewed by Mr. Major in January 2006 as "Meets Requirements." Between December 12, 2005 and March 11, 2006—during which Mr. Lee received five notices regarding his poor performance, including his termination notice and his performance review—Mr. Bedsole and Mr. Ethridge received only one personnel notice each, both of which were from Mr. Major.

15.    On May 29, 2007 employees at the Abbeville Plant were given notice of the Plant's imminent closing. The Abbeville Plant will close entirely on August 31, 2007.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this ___7th_ day of June, 2007.

_____
Brendt Murphy

# EXHIBIT 1

ATT #1

WESTPOINT STEVENS

## PERSONNEL NOTICE

INITIATED BY COMPANY ☐ AT REQUEST OF ASSOCIATE

ASSOCIATE: Claude Lee
ASSOCIATE NUMBER:
FACILITY: 044
DEPARTMENT: 65
SHIFT: 3
SUPERVISOR: B. Turner
NOTICE DATE: 12-12-05
EFFECTIVE DATE OF CHANGE:

TYPE OF NOTICE
1 - ASSOCIATE PROBLEM
2 - ASSOCIATE COMPLAINT
3 - NOTICE OF CHANGE
4 - REQUEST FOR CHANGE
5 - ASSOCIATE REQUEST
6 - COMMENDATION
7 - MISCELLANEOUS NOTICE

SITUATION IN BRIEF: JOB PERFORMANCE

DETAILS: Bob & I talked to Claude about concerns for his ability to properly & efficiently lead and supervise packing on 3rd shift. "Are you Able?" Claude says he has the ability & is the man to run 3rd shift, exceed standards, & look for improvements & ways to cut cost. Are you willing to accept responsibility & be hold ACCOUNTABLE for expectations of 3rd shift as listed above. Yes Sir. Could you run it without Michael's Help - Yes Sir. If Bob says you are the man for the Job, you are not going to let the company down. No Sir.

ACTION TAKEN: Told Claude that his performance & inability to lead his people made him an inefficient supervisor. This area must improve. He is required to enforce incorrect work procedure, discipline situations & communicate with other supervisors & Dept. Mgr. to solve all obstacles. (Attach additional sheets as necessary)

DISTRIBUTION
☐ COST DEPT.
☐ DEPT. FILES
☐ DIVISION HUMAN RESOURCES
☐ OFFICE MANAGER
☐ PAYROLL DEPT.
☐ HUMAN RESOURCES DEPT.
☐ VICE-PRESIDENT
☐ GENERAL MANAGER
☐ MANAGER
☐ ASST. MANAGER
☐ DEPT. MANAGER
☐ PRODUCTION DEPT.
☐ SUPPLY ROOM

RECOMMENDED BY: Claude Lee    12-16-05
DEPARTMENT MANAGER: Bob Turner    12-12-05
ASSOCIATE (if necessary):
OTHER (　)

Lee/WPH 0004

# EXHIBIT 2

# WESTPOINT HOME

*ATT. # 3*

## CORRECTIVE-ACTION REPORT - SALARIED (EXEMPT AND NONEXEMPT) PERSONNEL

| ASSOCIATE Claude Lee | ASSOCIATE # | JOB TITLE Supervisor | DATE 3-8-06 |
|---|---|---|---|
| FACILITY 44 | DEPARTMENT Packaging | | SHIFT 3rd |

**Performance/Conduct Description** (Fully describe the unacceptable performance/conduct, including details concerning place, date, time, persons involved, outcome and relevant conditions or circumstances.)

Claude is not performing his duties as a supervisor. When working last Thursday (3-2-06) Claude was questioned about an employee not working. He answered he did not know why, and did not question the employee about it. We have discussed this on several occassions and in great detail.

**Disciplinary Action Taken** (including discharge): Claude is being issued a written corrective action for poor job performance.

**Corrective-Action Plan:** (Describe any special assistance, in the form of job change, training, counseling, extra supervision or other action required to prevent recurrence. Identify all individuals responsible for implementation and follow-up of action plan.)

Claude must immediately identify, address, correct and follow up on all issues relating to his responsibility as a supervisor within the packaging dept. If not fully in control of his position as a supervisor in the packaging department within 2 weeks including proper communications of progress with management Claude could be immediately removed from his current position as supervisor.

**Comments:** (Describe associate's attitude and/or reactions and any special circumstances or consideration concerning the unsatisfactory performance.)

Follow-up conference date: 2 weeks or less Comments (Describe status of action plan): _____

| Claude Lee | | Michael W. Afford | 3-8-06 |
|---|---|---|---|
| ASSOCIATE'S SIGNATURE | DATE | IMMEDIATE SUPERVISOR | DATE |
| [signature] | 3.8.06 | | |
| HUMAN RESOURCES MANAGER | DATE | FACILITY MANAGER/CORPORATE OR DIVISION DEPARTMENT MANAGER | DATE |
| WITNESS | DATE | | |

CC-062503-CAR

# EXHIBIT 3

*ATT 4*

# WESTPOINT HOME

**CORRECTIVE-ACTION REPORT - SALARIED (EXEMPT AND NONEXEMPT) PERSONNEL**

| ASSOCIATE Claude Lee | ASSOCIATE # | JOB TITLE Supervisor | DATE 3-11-06 |
|---|---|---|---|
| FACILITY 44 | | DEPARTMENT Packing | SHIFT 3rd |

**Performance/Conduct Description** (Fully describe the unacceptable performance/conduct, including details concerning place, date, time, persons involved, outcome and relevant conditions or circumstances.)

Claude has failed to aggressively implement changes in production processes, associate training and monitoring, and communication. These deficiencies have resulted in poor job performance.

**Disciplinary Action Taken** (including discharge): Claude is immediately removed from his current position as a supervisor in the packaging dept.

**Corrective-Action Plan:** (Describe any special assistance, in the form of job change, training, counseling, extra supervision or other action required to prevent recurrence. Identify all individuals responsible for implementation and follow-up of action plan.) N/A

**Comments:** (Describe associate's attitude and/or reactions and any special circumstances or consideration concerning the unsatisfactory performance.)

Follow-up conference date: N/A    Comments (Describe status of action plan):

| Claude Lee | | Michael W. Alford | 3-11-06 |
|---|---|---|---|
| ASSOCIATE'S SIGNATURE | DATE | IMMEDIATE SUPERVISOR | DATE |
| | 3-11-06 | | |
| HUMAN RESOURCES MANAGER | DATE | FACILITY MANAGER/CORPORATE OR DIVISION DEPARTMENT MANAGER | DATE |
| WITNESS | DATE | | |

CC-062503-CAR

Lee/WPH - 0007

# EXHIBIT 4

## PERSONNEL NOTICE — JOB REFUSAL

*ATT 6*

W E S T P O I N T   S T E V E N S

☑ INITIATED BY COMPANY    ☐ AT REQUEST OF ASSOCIATE

| ASSOCIATE/APPLICANT | | ASSOCIATE NUMBER | TYPE OF NOTICE |
|---|---|---|---|
| *Claude Lee* | | *33519* | **7** 1 - ASSOCIATE PROBLEM |
| FACILITY *044* | DEPARTMENT *65* | SHIFT *1* | 2 - ASSOCIATE COMPLAINT |
| SUPERVISOR *M Alford* | | NOTICE DATE *3.15-06* | 3 - NOTICE OF CHANGE |
| EFFECTIVE DATE OF CHANGE | | | 4 - REQUEST FOR CHANGE |
| | | | 5 - ASSOCIATE REQUEST |
| | | | 6 - COMMENDATION |
| | | | 7 - MISCELLANEOUS NOTICE |

| SITUATION IN BRIEF |
|---|

(REFUSAL OF JOB OFFER), CHANGE OR PROMOTION

| DETAILS |
|---|

Associate/Applicant was offered on this date ___*3-11-06*___ the job indicated below but
                                              date of offer

declined to accept the job for the reason shown below.

JOB OFFERED: *Set Order Puller*    SHIFT: *1st*

REASON FOR REFUSAL: *I don't think I can do that Job.*

REFUSAL MADE TO: *Brandt Murphy*    TITLE: *H. R. Mgr.*
                  Name

ASSOCIATE'S/APPLICANT'S SIGNATURE _____

| ACTION TAKEN |
|---|

*refused to sign*

| DISTRIBUTION | | | (Attach additional sheets as necessary) |
|---|---|---|---|
| ☐ COST DEPT. | ☐ VICE PRESIDENT | RECOMMENDED BY | |
| ☐ DEPT. FILES | ☐ GENERAL MANAGER | | |
| ☐ INDUSTRIAL RELATIONS | ☐ MANAGER | DEPARTMENT MANAGER | |
| ☐ OFFICE MANAGER | ☐ ASST. MANAGER | | |
| ☐ PAYROLL DEPT. | ☐ DEPT. MANAGER | ASSOCIATE (if necessary) | |
| ☐ HUMAN RESOURCES DEPT. | ☐ PRODUCTION DEPT. | | |
| | ☐ SUPPLY ROOM | OTHER | |
| | ☐ | | |

WP-1157-JR-CS REV 11/97    SIGNATU'    DATES

Lee/WPH   00415   0009

# EXHIBIT 5

# WESTPOINT HOME
## SEPARATION NOTICE

FACILITY: *044- Abbeville*

NAME: *Claude Lee*  ASSOCIATE NO. *33519*  DATE *4-15-06*

DEPARTMENT: *PACKAGING*  OCCUPATION: *Supervisor*  SHIFT *3*  RATE *SAL*  DATE LAST HIRED (CSD) *2.7.77*

FORWARDING ADDRESS: *100 Murry St.*  DATE LAST WORKED *3-13-06*

*Abbeville, Alabama 36310*  SEPARATION DATE *4-15-06*

SEPARATIONS — Please check box opposite the reason for separation and explain below.

### VOLUNTARY
Gave notice of _____ days. ☐
Leaving Active Employment ☐
Leaving Locality (explain below)* ☐
Other Employment (explain below)* ☐
Transportation ☐
Housing ☐
Family Problems ☐
Health ☐
Pay ☐
Hours ☐
Supervision ☐
Work Conditions ☐
No Report (indicate follow-up) ☐
Medical, Pregnancy or Other Leave Expired ☐
Other (explain below) ☒
*No dissatisfaction could be identified

### INVOLUNTARY
Misconduct — Three written warnings within a 12-month period for offenses less than intolerable (Human Resources Manual — Section O-1, Part III-A) ☐

### Other involuntary
Job Elimination ☐
Temporary Employment Completed ☐
No Work Available — Leave Expired ☐
No Work Available — Introductory ☐
Inability to Perform Required Job Duties ☐
Garnishments ☐
Work Restriction Nonoccupational Origin ☐
Other (explain below) ☐

### Intolerable Offenses:
(Policy Manual, Section O-1, Part III-B)
Intoxicants on Job ☐
Deadly Weapons ☐
Falsifying Records ☐
Dishonesty/Theft ☐
Fighting ☐
Gross Insubordination ☐
Criminal Act Within/Outside Facility ☐
Damage to Property of Company/Others ☐
Dangerous Horseplay ☐
Endangering Life or Health of Self or Others ☐
Unauthorized Work Elsewhere While on Leave ☐
Employment with Direct Competition ☐

Promiscuous Behavior ☐
Sexual Misconduct ☐
Refusal To Cooperate in Investigation ☐
Excessive Unexcused Absences ☐
Sleeping on Job ☐
Misconduct Away From Facility ☐
Refusal To Submit to Drug Test ☐
Failure To Get Release of Garnishment ☐
Other (explain below) ☐

### OTHER
(Include in Separation Rate, not Quit Rate)
Returning to School ☐
Military ☐
Normal Retirement (Age 65) ☐
Delayed Retirement (After Age 65) ☐
Early Retirement (Before Age 65) ☐
Permanent Disability ☐
Workers' Compensation ☐
Death ☐
Transfer to Other Facility ☐
Plant Close ☐
Transfer to Exempt ☐
Other (explain below) ☐

EXPLANATION TO ASSOCIATE

*Claude was taken out of supervision. He was offered a hourly Job on 1ST or could use vacation time. Claude chose to use up vacation & quit.*

SUPERVISOR _____  DEPARTMENT MANAGER _____

## SEPARATION CHECKLIST
TO BE COMPLETED BY THE HUMAN RESOURCES DEPARTMENT FOR ALL TERMINATIONS AND TRANSFERS
(For any item which does not apply, check the Not Applicable blank)

1. Has the appropriate controller been contacted for information on any outstanding cash advances, accounts payable due the Company for any merchandise, etc.? Yes ____ N/A ✓

2. Has Transportation Center been contacted for information on Company car and air travel and auto rental credit cards and have these been surrendered to the Human Resources Department and returned to Transportation Center? Yes ____ N/A ✓

3. Have other items such as keys, entry cards, manuals and/or other Company properties been surrendered to the Human Resources Department? Yes ____ N/A ✓

4. Does the employee's final paycheck need holding until all of the above items have been checked and cleared? Yes ____ N/A ✓

5. Have "cards" such as Medical Coverage Identification, Prescription Drug, Vision and Associate Purchase Card been surrendered to the Human Resources Department? Yes ____ N/A ____

IMPORTANT: See the back of this form for applicable statement(s) to be read to the separating employee if he or she is a participant in the Company's group plans for medical care coverage and life insurance and review continuation of medical/dental/vision coverage under COBRA. Also: use form WP-1063-CS (Rev. 12-00) for Exit Interview.

REVIEWED BY _____  *unavailable* ASSOCIATE

HUMAN RESOURCES MANAGER _____  ASSISTANT MANAGER _____  *Denise* PREPARED _____  MANAGER _____

C-110105-SN

Lee/WPH - 0001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLAUDE GENE LEE, SR.,                    )
                                         )
        Plaintiff,                       )
                                         )
vs.                                      )        CASE NO. 1:06-CV-874-MHT
                                         )
WESTPOINT HOME, INC.,                    )
                                         )
        Defendant.                       )

## DECLARATION OF FRANK MAJOR, III

        Pursuant to 28 U.S.C. § 1746, I, Frank Major, III, certify that the following declaration is

based upon my personal knowledge.

        1.      I am a black male and am currently the Safety/Training Director for WestPoint

Home, Inc. and I assist in the human resources department in this role.

        2.      From December 15, 2005 to February 20, 2006, I was Claude Lee's direct

supervisor.  My title at that time was Acting Department Manager.  Previously, I was the

Assistant Department Manager under Mr. Bob Turner.

        3.      Although Mr. Lee's department had fairly high efficiency reports—that is, the

standards for each line, which periodically change, were close to or were being met, he was

failing to actually supervise the associates on his shift.  While meeting and exceeding production

standards was certainly important, more important, after the asset sale in August 2005, was that

WestPoint have on every shift and in every department managers and supervisors who were

willing and able to take charge, implement and enforce new work methods, and help move the

company towards its goal of becoming a stronger industry competitor.  In fact, when I

181473.1

periodically questioned him about concerns or matters regarding the shift, why certain machines on the line were not functioning, scheduling changes, and other matters with which a supervisor should be well in tune, Mr. Lee was unable to answer my questions. Instead, his subordinate, the Lead Person, was essentially performing Mr. Lee's supervisory role, and the Lead Person, not Mr. Lee was able to answer my questions. Mr. Lee simply was not managing his shift or his associates, and he would have to ask his Lead Person about issues and concerns I had, all of which were matters he, as the supervisor, should have known and should have corrected. For example, he would not take charge of the scheduling requirements for the department, which was part of his job as the supervisor. Each day schedules are set for the lines for the order in which certain products are to be handled. Mr. Lee would allow the Set Coordinator, one of his subordinates, to change the schedule without his knowledge or approval. It was Mr. Lee's responsibility to handle scheduling for his shift. Mr. Lee was not involved with the associates working on his shift; the associates whom he should have been supervising.

4.    I addressed Mr. Lee's ineffective leadership and poor performance on January 25, 2006. I completed and discussed with Mr. Lee his annual performance review in which I rated Mr. Lee as "fair." This is one of the lowest ratings on the performance review and was due to poor performance in supervision/management skills, communication skills and administration areas. These deficiencies were all attributable to his failure to properly carry out his supervisory role: to manage, support, and control the associates working on his shift. Attached as Exhibit 1 is a true and correct copy of the January 25, 2006 performance review for Mr. Lee.

5.    Despite these notices of poor performance, Mr. Lee failed to improve. On February 16, 2006, I again gave Mr. Lee a notice of his poor job performance. At this time, I completed a personnel notice for Mr. Lee and discussed with him his continued failure to

181473.1                                                    2

monitor associates, to enforce correct work procedures, and to communicate with other shift supervisors concerning problems affecting the department. The personnel notice I completed informed Mr. Lee that his failure to improve could require his removal from the position. Attached as Exhibit 2 is a true and correct copy of the February 16, 2006 personnel notice I gave Mr. Lee.

6.      Subsequently, on February 20, 2006 I changed positions and no longer directly supervised Mr. Lee. Mr. Michael Alford became Department Manager and Mr. Lee's direct supervisor.

7. In January 2006, I also completed performance reviews for Mike Ethridge, First Shift Supervisor in the Packaging Department, and Billy Wayne Bedsole, Second Shift Supervisor in the Packaging Department. I rated both Mr. Ethridge and Mr. Bedsole as "Meets Requirements." Of the three supervisors in the Packaging Department -- Mr. Lee, Mr. Ethridge and Mr. Bedsole -- Mr. Lee was the lowest performing. While all three needed to improve in various areas and I gave Mr. Bedsole and Mr. Etheridge personnel notices noting areas for improvement, Mr. Lee was the least effective leader and manager of the three and his conduct required repeated notices of poor performance. Mr. Lee lacked control over his associates and continuously failed to maintain the level of involvement and communication with his associates that I felt necessary to be an effective and successful supervisor. Mr. Lee, unlike Mr. Bedsole and Mr. Ethridge, made little or no effort to correct the performance deficiencies I addressed with him.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this __7th day of June, 2007.

<u>Frank Major, III</u>

# EXHIBIT 1





### WESTPOINT HOME

## SALARIED-EXEMPT
## PERFORMANCE REVIEW

NAME _Claude Lee_

DEPARTMENT/POSITION TITLE _Wrap and Pack - Supervisor_

FACILITY _044- Abbeville_

DIVISION and/or BUSINESS UNIT _Bed Products / sheets_

DATE LAST REVIEWED _____

JSD _____

RATING PERIOD _____

PERFORMANCE RATING _F_

DATE COMPLETED _1-25-06_

### GENERAL INSTRUCTIONS

| Timing: | A performance review is to be completed for each salaried-exempt associate annually between January 1 and January 31. It is the responsibility of each supervisor to prepare the performance review. |
|---|---|
| Procedure: | The associate's performance of assigned tasks and accountabilities should be rated with respect to the performance factors below, utilizing the following scale:<br><br>**S – Superior:** Consistently and substantially exceeds major job requirements. Accomplishments are extraordinary as demonstrated by job results.<br><br>**AR – Above Requirements:** Exceeds most job requirements. Job results are measurably higher than job requirements.<br><br>**MR – Meets Requirements:** Meets major job requirements. Performance is fully acceptable as demonstrated by job results.<br><br>**F – Fair:** Performance is slightly below what is expected in the position. Performance needs improvement.<br><br>**M – Marginal:** Fails to meet most job requirements. Performance requires immediate, substantial and sustained improvement. |
| Acknowledgement: | This appraisal has been reviewed with the associate. It is understood that the signature does not necessarily indicate agreement with the content of the review. |

Return to Table of Contents

## I.  MANAGEMENT SKILLS EVALUATION

After carefully evaluating Individual's work performance in relation to current job requirements, check the appropriate box to indicate the associate's performance.  Explanations of terms appear at the bottom of this page.  If not applicable, indicate N/A.

| Management Skills (Evaluate the first two skills categories only if the associate has supervisory responsibility.) | SUPERIOR | ABOVE REQUIREMENTS | MEETS REQUIREMENTS | FAIR | MARGINAL | Comments or Supportive Details — This section *must* be completed for each rating. |
|---|---|---|---|---|---|---|
| **DEVELOPMENT OF SUBORDINATES** Ability to prepare subordinates for current positions, as well as for positions of greater responsibility. | ☐ | ☐ | ☒ | ☐ | ☐ | Associates are cross trained on several different jobs. |
| **SUPERVISION/MANAGEMENT SKILLS** Ability to direct and control subordinates; ability to motivate and effectively coordinate the efforts of work groups. | ☐ | ☐ | ☐ | ☒ | ☐ | Claude has good management skills. Needs to work a little harder motivating associates |
| **STRATEGIC PLANNING/ORGANIZING** Ability to establish courses of action to accomplish specific goals. Allocation of resources, including setting priorities, meeting deadlines, anticipating problems. | ☐ | ☐ | ☒ | ☐ | ☐ | Claude does a good job keeping up with priorities. |
| **JOB KNOWLEDGE** Technical knowledge and the level of competence required to be successful in the incumbent position. | ☐ | ☐ | ☒ | ☐ | ☐ | Has good knowledge of the job and job duties |
| **QUALITY** Conformance to requirements re accuracy, thoroughness, acceptability of work performed. | ☐ | ☐ | ☒ | ☐ | ☐ | Quality is good. Needs to pay closer attention to lines |
| **COMMUNICATION SKILLS** Ability to clearly and persuasively express concepts, both orally and in writing; also, ability to listen effectively, grasp ideas and instructions. | ☐ | ☐ | ☐ | ☒ | ☐ | Does not communicate well with associates |
| **INTERPERSONAL SKILLS** Ability to work cooperatively with subordinates, peers, superiors, and external contacts; ability to influence others without direct authority. | ☐ | ☐ | ☒ | ☐ | ☐ | Works well with associates. |
| **ADMINISTRATIVE** Ability to satisfy all administrative components of position (i.e. timeliness, completeness, accuracy, documentation). | ☐ | ☐ | ☐ | ☒ | ☐ | Does not complete paperwork in timely manner |
| **LEARNING CAPABILITIES; OTHER RELEVANT SKILLS** | ☐ | ☐ | ☒ | ☐ | ☐ | Able to adapt to changes. Has worked many years in Packaging |

**PERFORMANCE EVALUATION RATING**

**Superior**　　　　　　Consistently and substantially exceeds major job requirements. Accomplishments are extraordinary as demonstrated by job results.

**Above Requirements**　Exceeds most job requirements. Job results are measurably higher than job requirements.

**Meets Requirements**　Meets major job requirements. Performance is fully acceptable as demonstrated by job results.

**Fair**　　　　　　　　Performance is slightly below what is expected in the position. Performance needs improvement.

**Marginal**　　　　　　Fails to meet most job requirements. Performance requires immediate, substantial and sustained improvement.

Return to Table of Contents

## II. ANNUAL ACCOMPLISHMENT SUMMARY DEVELOPMENT REVIEW
(This page to be completed by immediate manager)

**A. PERFORMANCE SUMMARY AND TREND** (Summarize your view of associate's accomplishments versus goals in the past year and indicate performance.)

Zero lost time accidents
9 recordable cases for department
Incident rate for department 4.02

**B. STRENGTHS/GROWTH** (Describe associates strengths and how they changed in the past year.)

Claude's strength is experience in the Packaging department and his ability to adapt to changes.

**C. DEVELOPMENTAL RECOMMENDATIONS**
1. List Developmental Objectives and/or Skills To Improve based on overall performance rating and evaluation of management skills.
2. For any deficiencies noted on Management Skill Evaluation, planned development activity must be detailed here.
3. Developmental Objectives or Skills To Improve should be directly transferred onto next year's Objective Setting page.

| Developmental Objectives/Skills To Improve | Planned Developmental Activity |
|---|---|
| House Keeping | Continue to monitor |
| Associate Training | Continue to observe associates for areas of improvement |
| | |
| | |
| | |

**D. FUTURE CAREER DISCUSSION**
Discuss associate's career goals and objectives. List any positions in which the associate expresses an interest. Refer to Human Resources Manager if indicated.

Claude loves his job and is willing to take any opportunity for advancement.

**E. OVERALL PERFORMANCE RATING**
☐ Superior    ☐ Above Requirements    ☐ Meets Requirements    ☒ Fair    ☐ Marginal

**F. ASSOCIATE'S COMMENTS**

**G. SIGNATURES**

Date 1-25-06

C.L.

☐ Check if additional comments attached

Return to Table of Contents

Lee/WPH - 0038

ANNUAL ACCOMPLISHMENT SUMMARY DEVELOPMENT REVIEW          **Strictly Private**

(This page to be completed by associate)

A.  ACCOMPLISHMENT SUMMARY (Summarize your accomplishments versus goals in the past year.)

> Brought PERCENtAGes to 100%. Some work days more than 100%. Employees work toGether well. work Along with MechAnics to mAke Sure MAchines Are kept Running.

B.  STRENGTHS/GROWTH (Describe your strengths and how they changed in the past year.)

> I MAke Sure eAch employee is working to their Full Potential. IF I Am Strong At this. my Employees will be Strong And know they Must do their Jobs well. I CAn help MY employee to be the best they CAn be.

C.  IMPROVEMENT/DEVELOPMENT NEEDS/PLANS (Identify most critical needs and responsive action plans.)

> MAke Sure every Employee Receives the best TRAining Possible For old And New Jobs

D.  JOB/CAREER INTEREST (If interested in a job change, list preference including position title, business unit, location. Specify any geographic limitations, desired timing, etc. Also describe long-term interest.)

> I Like being Supervisor And I Love MY Job.

_Claude Lee_                              1-25-06
Associate's Signature                     Date

[ Return to Table of Contents ]



# WESTPOINT HOME

## PLANNED PERSONAL OBJECTIVES AND ACCOMPLISHMENTS FOR SALARIED-EXEMPT ASSOCIATES

*Lee  ClAude  G.*
Associate's Name (last, first, middle initial)

*SupeRViSoR*
Title

Date

*Bed PRoducts Sheets*
Division and/or Business Unit

Planned Personal Objective Form  *1-01-06*  to  *12-31-06*

1. Efficiency Goal 95% end of 1st Qtr. 100% for 2nd, 3rd, 4th
2. Incident Rate of 2% or less for Dept.
3. Reduce Lost PLR Doz by .13¢ by the end of 4th Qtre.
   Goals of .69¢ end of 1st Qtre, .61¢ end of 2nd, .58¢ end of 3rd, .56 end of 4th
4. Zero Lost time Accidents in 2006

*Claude Lee*
Associate's Signature

*1-25-06*
Date

Supervisor/Manager

*1.25.06*
Date

(Note: All salaried-exempt associates supervising others must include in their goals their efforts in meeting EEO/AAP expectations.)

Please indicate target date for meeting each goal (1st, 2nd, 3rd and 4th quarter).

*Signatures above indicate agreement on goals and objectives at beginning of evaluation period.

| Return to Table of Contents |

# EXHIBIT 2

*ATTACH #L*

**PERSONNEL NOTICE**

### WESTPOINT STEVENS

[X] INITIATED BY COMPANY [ ] AT REQUEST OF ASSOCIATE

| | |
|---|---|
| ASSOCIATE *Claude Lee* | ASSOCIATE NUMBER |

| FACILITY 044 | DEPARTMENT Packaging | SHIFT *3rd* | 1 - ASSOCIATE PROBLEM |
|---|---|---|---|
| SUPERVISOR | | NOTICE DATE *2.16.06* | 2 - ASSOCIATE COMPLAINT<br>3 - NOTICE OF CHANGE<br>4 - REQUEST FOR CHANGE |
| EFFECTIVE DATE OF CHANGE ASAP | | | 5 - ASSOCIATE REQUEST<br>6 - COMMENDATION<br>7 - MISCELLANEOUS NOTICE |

SITUATION IN BRIEF
Poor Job Performance

DETAILS
This Personnel Notice is to inform you of the need to increase the montoring of your associates. There is an excessive waste of time and motion. You associates continue to use improper job methods even after the correct method has been given or even shown to them. There also needs to be an immediate increase in your problem solving of incorrect work flow through out the department. There also needs to be an improvement in the communication with the previous Supervisor for potential problems that may have occurred during the shift or even issues that you find during your walk through, these need to be addressed immediately. You are being issued a Personnel Notice for Poor Job Performance.

ACTION TAKEN
Covered the above with Claude. Asked him if he needed any other guidance or assistance. Failure to meet these goals and guidelines immediately will result in Corrective Action which may include removal from your job.

DISTRIBUTION
[ ] COST DEPT.
[ ] DEPT. FILES
[ ] INDUSTRIAL RELATIONS
[ ] OFFICE MANAGER
[ ] PAYROLL DEPT.
[ ] HUMAN RESOURCES DEPT.

[ ] VICE PRESIDENT
[ ] GENERAL MANAGER
[ ] MANAGER
[ ] ASST. MANAGER
[ ] DEPT. MANAGER
[ ] SUPPLY ROOM

| RECOMMENDED BY | | DATES |
|---|---|---|
| DEPARTMENT MANAGER | | 2.16.06 |
| ASSOCIATE (if necessary) *Claude Lee* | | 2-16-06 |
| OTHER | | |
| | SIGNATURE | DATES |