IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLAUDE GENE LEE, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 1:06-CV-874-MHT |
| | ) |
| WESTPOINT HOME, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT WESTPOINT HOME, INC.'S RESPONSE
TO COURT'S ORDER OF SEPTEMBER 14, 2007**

Defendant WestPoint Home, Inc. ("WestPoint"), pursuant to the Court's order during the pretrial hearing in this matter on September 14, 2007, submits the following chart and information establishing that Plaintiff, Claude Lee, is not similarly situated in all relevant respects to the other packaging department shift supervisors, Billy Wayne Bedsole and Mike Ethridge, with whom he seeks to compare himself:

|  | **PLAINTIFF** | **BEDSOLE** | **ETHRIDGE** |
|---|---|---|---|
| **December 2005** | Personnel Notice from Turner:<br><br>**Poor Job Performance** | **None** | **None** |
| **January 2006**[1] | Performance evaluation from Major<br><br>Rating: **FAIR** | Performance evaluation from Major<br><br>Rating: **MEETS REQUIREMENTS** | Performance evaluation from Major<br><br>Rating: **MEETS REQUIREMENTS** |
| **February 2006** | Personnel Notice from Major:<br><br>**Poor Job Performance**<br><br>--No criticism regarding production efficiency | Personnel Notice from Major:<br><br>**Poor Job Performance**<br><br>--Reminder of 100% production efficiency goal | Personnel Notice from Major:<br><br>**Poor Job Performance**<br><br>--Reminder of 100% production efficiency goal |
| **March 8, 2006** | Corrective Action Report from Alford:<br><br>**Poor Job Performance** | **None** | **None** |
| **March 11, 2006** | Corrective Action Report from Alford<br><br>**Poor Job Performance** | **None** | **None** |

This chart demonstrates that Lee is not similarly situated to Bedsole or Ethridge. To be "similarly situated", Lee must establish that he, Bedsole, and Ethridge are similarly situated *"in terms of their job performance."* *Tolbert v. Briggs and Stratton Corp.*, No. 05-1149, 2007 U.S. Dist. LEXIS 9342, at *16 (M.D. Ala. Feb. 8, 2007) (citing *Smith v. PAPP Clinic*, 808 F.2d 1449, 1451-52 (11th Cir. 1987)). Lee is not similarly situated to Bedsole or Ethridge, as the chart plainly shows.

---

[1] The final evaluations for Lee, Bedsole, and Ethridge were lowered in four criteria after Lee met with his supervisor, Plant Manager Glenn McCants, and reviewed the draft evaluations.

In December 2005, Bob Turner warned Lee that his "performance and inability to lead his people made him an inefficient supervisor [and that] [t]his area must improve." (doc. no. 51, Tab 1.) Bedsole and Ethridge received no personnel notice from Turner in December 2005.

In January 2006, Frank Major prepared performance evaluations for Lee, Bedsole, and Ethridge. As a part of the review process, Major met with his supervisor, Plant Manager Glenn McCants, to discuss the draft evaluations. As a result of Major's meeting with McCants, Major lowered the evaluations for all three men in four areas of performance. He made these changes before he met with Lee, Bedsole, and Ethridge. (doc. no. 51, Tab 7; Major depo. at 102:3-22; doc. no. 51, Tab 7, Major supp. decl. at ¶ 3).

In the performance evaluation, Major criticized Lee's performance. For example, Major rated Lee "Fair" in three categories, and gave Lee the following comments:

- **SUPERVISION/MANAGEMENT SKILLS:** " . . . . Needs to work a little harder motivating associates"

- **COMMUNICATION SKILLS:** "Does not communicate well with associates"

- **ADMINISTRATIVE:** "Does not complete paperwork in timely manner"

(doc. no. 51, Tab 2.)

These criticisms of Lee's performance were not new. In Lee's performance evaluation for the previous year (completed in January 2005), his then-supervisor, Turner, wrote in the comments section for supervision/management skills that: "Claude needs to motivate his people a little stronger. Hold them responsible for their mistakes." (doc. no. 18, Ex. G at Lee/WPH 0030.) In the year between Turner's evaluation and Major's, Lee did not improve his performance, at least in the eyes of his supervisors, as is shown by the December 2005 personnel notice for poor performance and the January 2006 "fair" performance evaluation.

In contrast to Major's evaluation of Lee, Major rated Bedsole and Ethridge as "meets requirements" in the same categories.  For Bedsole, Major commented:

- **SUPERVISION/MANAGEMENT SKILLS:**  "Does a good job motivating associates"

- **COMMUNICATION SKILLS:**  "Communicates well with associates"

- **ADMINISTRATIVE:**  "Keeps up with paperwork and reviews"

(Major supp. decl., doc. no. 51, Tab 7.)

Similarly, for Ethridge, Major commented:

- **SUPERVISION/MANAGEMENT SKILLS:**  " . . . . Motivates associates to work hard and safe"

- **COMMUNICATION SKILLS:**  "Communicates very well with associates"

- **ADMINISTRATIVE:**  "Completes paperwork in a very timely manner"

(Major supp. decl., doc. no. 51, Tab 7.)

Major also gave Lee a Personnel Notice for poor job performance in February 2006, noting that Lee needed to "increase monitoring of [his] associates" and warning that "[t]here is excessive waste of time and motion."  (doc. no. 51, Tab 3.)  According to Major, this was "a verbal warning on paper . . . letting Claude know that these things needed to be worked on."  (doc. no. 51, Tab 8, Major depo. at 119:16-121:22.)  Major discussed this notice with Lee and made clear to Lee that improvement was expected.  (*Id*. at 161:21-162:20.)

Ethridge and Bedsole also received personnel notices for poor job performance from Major in February 2006.  (doc. no. 18, Ex. F.)  In the personnel notices Ethridge and Bedsole received, in addition to repeating the comments given to Lee, Major also reminded them of the 100% production efficiency goal.  This distinction is important, because although Lee argues that he could not have been underperforming because he was meeting efficiency production goals, none of the written criticisms Lee received -- from any supervisor -- had to do with his

185732.1                                            4

production efficiency.  Production efficiency was only one part of Lee's supervisory job and apparently it was one he had no problem with.  But Lee's reliance on production efficiency as a proxy for his performance as a supervisor misuses this performance criterion.  The production efficiency rating is a measure of efficiency when a shift's production machines are operating. (doc. no. 51, Tab 8, Major dep. at 47:10-48:13).  This objective measurement says nothing about many aspects of Lee's performance that are addressed by the personnel notices and, in particular, the performance evaluation.  For example, there were times when Lee's associates were seen standing around, and his machines were not running.  (*See id.* at 53:8-54:9, 63:15-64:21; 82:22-83:23).  Lee could not explain to his supervisors why his associates were not working.  (*Id.)* This problem would not be reflected in an efficiency production report.  Instead, Lee's chronic problems were his failures to monitor and supervise his associates, to remedy his associate's excessive waste of time, and to be in control of and aware of his associates and their work. [2] (*See* Major depo. at 53:8-54:9; 63:15-64:21; 82:22-83:23; doc. no. 14, Major decl. at Exs. 1-2; doc. no. 14, Murphy decl. at Exs. 1-3.)

     Lee, Bedsole, and Ethridge were warned in the February 2006 notices that: "[f]ailure to meet these goals and guidelines immediately will result in Corrective Action which may include removal from your job."  (doc. no. 51, Tab 3; doc. no. 18, Ex. F.)  Major testified in his declaration that Lee was the least effective leader and supervisor among the three and that Bedsole and Ethridge, unlike Lee, corrected the performance deficiencies he pointed out to them. (doc. no. 14, Major decl. at  7.)

---

[2] For example, Lee claimed that his lead person, Michael Lingo, was not performing his job and although Lingo worked for Lee for over a year, Lee never gave Lingo a personnel notice or a corrective action report for his poor performance; Lee simply completed the yearly review. (doc. no. 51, Tab 6, Lee depo. at 177:15-178:22.)

On March 8, 2006, Lee was given a corrective action report from Michael Alford. Bedsole and Ethridge did not receive corrective action reports critical of their performance. Alford wrote that Lee was "not performing his duties as a supervisor." Specifically, when questioned about an employee not working, Lee could not provide any explanation to Alford. (doc. no. 51, Tab 4). This is one of the same complaints Major had had with Lee's performance. (doc. no. 51, Tab 8, Major depo. at 53:8-54:9; 63:15-64:21; 82:22-83:23). Alford noted in the corrective action report, "we have discussed this on several occasions and in great detail." (*Id*.) The corrective action report was clear: "**Claude is being issued a written corrective action for poor job performance**." (*Id*.) Alford warned Lee that he "Must immediately identify, address, correct, and follow up on all issues relating to his responsibility as a supervisor." (*Id*.) Alford noted that there would be a follow up conference in two weeks or less and that Lee "could be immediately removed from his current position as supervisor" if he failed to improve. (*Id*.)

Indeed, Lee failed to improve, and on March 11, 2006 Alford gave Lee yet one more corrective action report and removed Lee from his supervisory position. (doc. no. 51, Tab 5). In this report, Alford wrote that Lee "failed to aggressively implement changes . . . associate training, and monitoring, and communication. These deficiencies . . . resulted in poor job performance." (*Id.*)

Lee plainly is not similarly situated to Bedsole or Ethridge. Summary judgment is appropriate if the plaintiff fails to show the existence of a similarly situated employee, and no other evidence of discrimination is present. *See Holifield v. Reno*, 115 F. 3d 1555, 1562 (11th Cir. 1997). Moreover, "[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions." *Id*. Lee's performance was criticized by three separate supervisors-- each of whom found his performance subpar. Lee's performance was unlike

185732.1

6

Ethridge and Bedsole who were *not* repeatedly written up for poor performance and who adequately met the performance requirements. Lee, Ethridge, and Bedsole are not similarly situated in all relevant respects and certainly not in terms of their job performance. Accordingly, WestPoint is entitled to summary judgment on Lee's claims.

Respectfully submitted this 17th day of September, 2007.

/s/ Kelly F. Pate
One of the Attorneys for Defendant WestPoint Home, Inc.

**OF COUNSEL:**
David R. Boyd (BOY005)
dboyd@balch.com
Dorman Walker (WAL086)
dwalker@balch.com
Kelly F. Pate (FIT014)
kpate@balch.com
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing and/or that a copy of the foregoing has been served upon the following by placing a copy of same in the United States mail, properly addressed and postage prepaid, on this 17th day of September, 2007:

Jay E. Tidwell, Esq.
Veal Cloud & Tidwell, LLC
2112 11th Avenue South, Suite 217
Birmingham, AL 35205

Stephen C. Wallace, Esq.
William M. Dawson, Esq.
Dawson & Wallace, LLC
2229 Morris Avenue
Birmingham, AL 35203

Richard E. Crum, Esq.
M. Russ Goodman, Esq.
Cobb, Shealy, Crum, Derrick & Pike, P.A.
206 North Lena Street
Dothan, AL 36303

/s/ Kelly F. Pate
Of Counsel