IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

CLAUDE GENE LEE, SR.,              )
                                   )
            Plaintiff,             )
                                   )
vs.                                )        CASE NO:  1:06-cv-874-MHT
                                   )
WESTPOINT HOME, INC.,              )
                                   )
            Defendant.             )

SUPPLEMENTARY RESPONSE TO SUMMARY JUDGMENT

COMES NOW the Plaintiff Claude Gene Lee, Sr. ("Lee") and pursuant to
the Court's request for additional information at the pre-trial hearing concerning
the write-ups submitted for plaintiff and similarly situated caucasian comparators.

From 2001-2005, Bob Turner served as Lee's direct supervisor.  While in
this supervisory capacity, Lee always received an overall evaluation of "meets
expectations," as night shift supervisor.  Furthermore, during these many years,
Lee was never disciplined or given any written warning.  However, in December,
2005, Lee was given a personnel notice.  Such notices are given for a number of
reasons; however, this particular personnel notice did not identify any rationale
for it.  It was explained to Lee that the new management was putting all
managers on notice of a need to meet certain production goals.  In his deposition
Lee testified that all shift supervisors were told to improve their efficiency and
communicate better with each other.  (Lee dep. 53-58).  This is confirmed in
Major's deposition, where he stated that he and Turner met with all shift

supervisors concerning these stated efficiency goals. (Majors dep. 43-44). Therefore, Lee was not the only shift supervisor counseled on this occasion.

As noted, Lee was given an evaluation on January 25, 2006. Although Major had little less than a month to observe Lee, he evaluated and rated his performance for the entire 2005 year. Major admits never talking to Bob Turner, Lee's supervisor from 1-1-05 through 12-16-05, about Lee's performance that year. Instead, Major was instructed to evaluate Lee. After doing so, Major was further instructed to change his ratings, thereby lowering Lee's rating. Of note, a number of categories and comments were changed. Major testified he changed Lee's ratings after meeting with Glenn McCants, who is believed to be a white male. Defendant has produced nothing from McCants, and Lee maintains that his ratings were changed after he had been shown his evaluation.

As to the ratings, Lee's evaluation was changed in a number of categories:

| Categories | Original Rating | Altered Rating |
|---|---|---|
| Supervision/Management Skills | Meets Requirements with comment that "**Claude has good management skills**." | Fair |
| Job Knowledge | Above requirements | Meets requirements |
| Communication Skills | Above requirements | Fair |
| Administrative | Above requirements | Fair |
| Overall | Meets requirements | Fair |

In addition to the ratings being changed, Major's comments after the ratings have also been altered. Major admits to changing the comments;

however, he claimed not to remember the original comment. We have asked for the original document to be produced, but is has not been received.

In this evaluation, Lee was given personal objectives for 2006, which included efficiency goals, incident rate of 2% or less, reducing costs per dozen, and zero lost time accidents. He met these objectives, and defendant concedes that he was not terminated for any perceived failure regarding these matters.

Billy Wayne Bedsole's ratings were also altered, but none of the categories were changed to fair, and his overall rating remained: meets requirements. Also, Bedsole was given the same personal objectives as Lee. Bedsole, unlike Lee, failed to meet the production efficiency goal ratings set out in his 2005 evaluation.

Similarly, the ratings for the other white supervisor, Mike Etheridge, were changed, but none were changed to fair and he maintained an overall rating of meets requirements. Etheridge was given the same personal objectives, but like Bedsole, he failed to meet the production efficiency goals.

As for a comparison of the production efficiency goals, it is undisputed Lee was attaining the goals while the two white supervisors: Bedsole and Etheridge, were not:

| PRODUCTION EFFICIENCY | | | |
|---|---|---|---|
| Week ending date | 1st Shift Ethridge | 2nd Shift Bedsole | 3rd Shift Lee |
| 12/18/05 | 91.13% | 90.27% | 97.26% |
| 12/25/05 | 95.93% | 96.50% | 95.59% |

| 1/1/06 | 87.26% | 95.01% | 97.55% |
|--------|--------|--------|--------|
| 1/8/06 | 91.05% | 91.57% | 95.83% |
| 1/15/06 | 95.27% | 92.72% | **104.95%** |
| 1/22/06 | 94.47% | 88.74% | **106.90%** |
| 1/29/06 | 98.15% | 99.59% | **105.77%** |
| 2/5/06 | 99.36% | 98.43% | **104.87%** |
| 2/12/06 | 96.38% | 90.44% | 98.04% |
| 2/26/06 | 95.96% | 83.46% | **101.14%** |
| 3/5/06 | 89.51% | 86.00% | **100.73%** |
| 3/12/06 | 94.24% | 90.64% | 97.09% |
| 3/19/06 | 93.38% | 78.45% | 96.41% |
| 3/26/06 | 82.22% | 82.19% | 86.65% |

(See Exhibit A).

The above table shows the production efficiencies for Etheridge, Bedsole, and Lee.  This table clearly shows Lee was by far the best producing supervisor during the three months leading up to Lee's termination from Westpoint.  Lee had the best production efficiency in 13 out of the 14 weeks.  During these 14 weeks, Lee exceeded 100% production efficiency six times compared to zero times for both Etheridge and Bedsole.  Also, of note, after Lee was terminated the efficiency rating for his third shift declined.

On February 16, 2006 all shift supervisors were given a personnel notice by Major. Bedsole's notice states:

> Your shift's 2 weeks average for weeks ending 2.5.06 and 2.12.06 was 94.4%. This should have exceeded 100% production efficiency for a 2 week average. **You must immediately bring your efficiency up to 100% or greater.** Part of this is a result of not properly monitoring your associates. There is an excessive waste of time and motion. They continue to use improper job methods even after the correct method has been given or even shown to them. There also needs to be an immediate increase in your problem solving of incorrect work flow through out the department. There needs to be an improvement in the communication with the previous Supervisor for potential problems that may have occurred during the shift or even any issues that you find during your walk through, these need to be addressed immediately. You are being issued a Personnel Notice for Poor Job Performance.

(See Exhibit B).

Interestingly, in the weeks after receiving this notice, Bedsole did not meet stated production efficiency goals, and in fact, his efficiency declined, yet no action was taken.

Etheridge's notice states:

> Your shift's 2 weeks average for weeks ending 2.5.06 and 2.12.06 was 97.9%. This should have exceeded 100% production efficiency for a 2 week average. **You must immediately bring your efficiency up to 100% or greater.** Part of this is a result of not properly monitoring your associates. There is an excessive waste of time and motion. They continue to use improper job methods even after the correct method has been given or even shown to them. There also needs to be an immediate increase in your problem solving of incorrect work flow through out the department. There needs to be an improvement in the communication with the previous Supervisor for potential problems that may have occurred during the shift or even any issues that you find during your walk through, these need to be addressed immediately. You are being issued a Personnel Notice for Poor Job Performance.

(See Exhibit C).

Similarly, following this notice, Etheridge did not meet the stated production efficiency goals and his performance declined as well.

Admittedly, Lee received a notice by Major at this same time. However, since Lee was meeting his efficiency goals, any complaint pales in comparison to Bedsole and Etheridge.

Mike Alford later became Lee's third supervisor in three months. On 3/8/06, Alford wrote up Lee only for some incident occurring on 3/2/06 where an employee was alleged to not be working. Lee addressed this with Alford and explained that the employee was merely going to the restroom to wash his hands. Lee understood that it was important to maintain a clean working environment and to have his employees regularly wash their hands while handling sheets and other linens. Although the report indicates Lee had two weeks to correct the matter, Lee was terminated from his supervisory position three days later on 3/11/06.

The context of these firings should be considered. Lee has a long work history without any disciplinary actions. Suddenly, after 30 years and in the span of 3 months of write-ups, he is terminated. Yet reviewing the basic measure of his performance, he out produced all other shift supervisors and was meeting his yearly objectives. Lee disputes the claims he was not performing well. Given these facts, along with the effort to alter his 2005 evaluation, there is more than enough evidence for this case to proceed to trial. Summary judgment would be inappropriate.

/s/ Jay E. Tidwell
Jay Tidwell (TID009)

OF COUNSEL:

TIDWELL LAW GROUP, LLC
2112 11th Avenue South, Suite 217
Birmingham, Alabama 35205
(205) 322-6060 Phone
(205) 326-8981 Fax

/s/ Stephen C. Wallace
Stephen C. Wallace

OF COUNSEL:

DAWSON & WALLACE, LLC
2229 Morris Avenue
Birmingham, AL 35203

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of September 2007, I have served a copy of the above and foregoing on counsel for all parties by:

_____     Facsimile transmission;

_____     Hand Delivery:

_____     Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to:

___X___     Using the CM/ECF system which will send notifications of such to the following:

David R. Boyd, Esq.
Kelly F. Pate, Esq.
Balch & Bingham LLP
Post Office box 78
Montgomery, Alabama 36101-0078

/s/ Jay E. Tidwell
Of Counsel

/s/ Stephen C. Wallace
Of Counsel

EXHIBIT A

Abbeville Packing Year-To-Date Summary
2005

| W/E Date | 1st Shift | 2nd Shift | 3rd Shift | All Shifts |
|---|---|---|---|---|
| 07/03/05 | 73.28% | 62.33% | 69.78% | 68.46% |
| 07/10/05 | 73.02% | 69.81% | 69.50% | 70.77% |
| 07/17/05 | 70.15% | 64.04% | 68.03% | 67.41% |
| 07/24/05 | 82.28% | 70.56% | 75.94% | 76.26% |
| 07/31/05 | 73.96% | 73.46% | 75.50% | 74.31% |
| 08/07/05 | 80.47% | 62.00% | 73.08% | 71.85% |
| 08/14/05 | 79.92% | 77.16% | 75.76% | 77.62% |
| 08/21/05 | 85.08% | 71.14% | 75.74% | 77.32% |
| 08/28/05 | 78.41% | 64.07% | 73.11% | 71.86% |
| 09/04/05 | 81.91% | 70.06% | 79.01% | 76.99% |
| 09/11/05 | 90.20% | 73.38% | 79.93% | 81.17% |
| 09/18/05 | 71.00% | 69.05% | 68.06% | 69.37% |
| 09/25/05 | 80.06% | 82.58% | 72.80% | 78.48% |
| 10/02/05 | 90.54% | 88.27% | 87.61% | 88.81% |
| 10/9/2005 | 90.67% | 84.34% | 86.50% | 87.17% |
| 10/16/2005 | 96.48% | 89.91% | 85.17% | 90.52% |
| 10/23/2005 | 92.10% | 90.14% | 92.41% | 91.55% |
| 10/30/2005 | 92.49% | 87.07% | 87.13% | 88.90% |
| 11/6/2005 | 99.04% | 90.55% | 90.02% | 93.20% |
| 11/13/2005 | 96.57% | 89.13% | 90.62% | 92.11% |
| 11/20/2005 | 96.03% | 91.78% | 102.01% | 96.61% |
| 11/27/2005 | 94.80% | 99.79% | 94.37% | 96.32% |
| 12/4/2005 | 103.92% | 101.38% | 97.70% | 101.00% |
| 12/11/2005 | 102.09% | 94.15% | 97.34% | 97.86% |
| 12/18/2005 | 91.13% | 90.27% | 97.26% | 92.89% |
| 12/25/2005 | 95.93% | 96.50% | 95.59% | 96.01% |
| 1/1/2006 | 87.26% | 95.01% | 97.55% | 93.27% |
| 1/8/2006 | 91.05% | 91.57% | 95.83% | 92.82% |
| 1/15/2006 | 95.27% | 92.72% | 104.95% | 97.64% |
| 1/22/2006 | 94.47% | 88.74% | 106.90% | 95.29% |
| 1/29/2006 | 98.15% | 99.59% | 105.77% | 101.17% |
| 2/5/2006 | 99.36% | 98.43% | 104.87% | 100.89% |
| 2/12/2006 | 96.38% | 90.44% | 98.04% | 94.47% |
| 2/26/2006 | 95.96% | 83.46% | 101.14% | 93.16% |
| 3/5/2006 | 89.51% | 86.00% | 100.73% | 91.81% |
| 3/12/2006 | 94.24% | 90.64% | 97.09% | 93.68% |
| 3/19/2006 | 93.38% | 78.45% | 96.41% | 88.45% |
| 3/26/2006 | 82.22% | 82.19% | 86.65% | 83.43% |

**EXHIBIT B**

## PERSONNEL NOTICE

### W E S T P O I N T  S T E V E N S

[X] INITIATED BY COMPANY  ☐ AT REQUEST OF ASSOCIATE

ASSOCIATE: Billy Wayne Bedsole      ASSOCIATE NUMBER:

| | |
|---|---|
| FACILITY 044 | DEPARTMENT Packaging |
| SUPERVISOR | |
| EFFECTIVE DATE OF CHANGE ASAP | |

SHIFT 2nd

NOTICE DATE 2.15.06

1 - ASSOCIATE PROBLEM
2 - ASSOCIATE COMPLAINT
3 - NOTICE OF CHANGE
4 - REQUEST FOR CHANGE
5 - ASSOCIATE REQUEST
6 - COMMENDATION
7 - MISCELLANEOUS NOTICE

**SITUATION IN BRIEF**
Poor Job Performance

**DETAILS**
Your shift's 2 weeks average for weeks ending 2.5.06 and 2.12.06 was 94.4%. This should have exceeded 100% production efficiency for a 2 week average. You must immediately bring your efficiency up to 100% or greater. Part of this is a result of not properly monitoring your associates. There is an excessive waste of time and motion. They continue to use improper job methods even after the correct method has been given or even shown to them. There also needs to be an immediate increase in your problem solving of incorrect work flow through out the the department. There needs to be an improvement in the communication with the previous Supervisor for potential problems that may have occurred during the shift or even any issues that you find during your walk through, these need to be addressed immediately. You are being issued a Personnel Notice for Poor Job Performance.

**ACTION TAKEN**
Covered the above with Billy Wayne. Asked them if they needed any other guidance or assistance. Failure to meet these goals and guidelines immediately will result in Corrective Action which may include removal from your job.

**DISTRIBUTION**
☐ COST DEPT.
☐ DEPT. FILES
☐ INDUSTRIAL RELATIONS
☐ OFFICE MANAGER
☐ PAYROLL DEPT.
☐ HUMAN RESOURCES DEPT.
☐ VICE PRESIDENT
☐ GENERAL MANAGER
☐ MANAGER
☐ ASST. MANAGER
☐ DEPT. MANAGER
☐ SUPPLY ROOM

RECOMMENDED BY

| | SIGNATURE | DATES |
|---|---|---|
| DEPARTMENT MANAGER | | 2.16.06 |
| ASSOCIATE (if necessary) | Billy Bedsole | 2-15-06 |
| OTHER | | |

Lee/WPH - 0565

**PERSONNEL NOTICE**                                          EXHIBIT _C_

WESTPOINT STEVENS

[X] INITIATED BY COMPANY   [ ] AT REQUEST OF ASSOCIATE

| ASSOCIATE Mike Ethridge | | ASSOCIATE NUMBER | | 1 -ASSOCIATE PROBLEM |
|---|---|---|---|---|

FACILITY 044   DEPARTMENT Packaging   SHIFT 1st

SUPERVISOR

EFFECTIVE DATE OF CHANGE  ASAP   NOTICE DATE 2.16.06

1 - ASSOCIATE PROBLEM
2 - ASSOCIATE COMPLAINT
3 - NOTICE OF CHANGE
4 - REQUEST FOR CHANGE
5 - ASSOCIATE REQUEST
6 - COMMENDATION
7 - MISCELLANEOUS NOTICE

**SITUATION IN BRIEF**
Poor Job Performance

**DETAILS**
Your shift's 2 weeks average for weeks ending 2.5.06 and 2.12.06 was 97.9%. This should have exceeded 100% production efficiency for a 2 week average. You must immediately bring your efficiency up to 100% or greater. Part of this is a result of not properly monitoring your associates. There is an excessive waste of time and motion. They continue to use improper job methods even after the correct method has been given or even shown to them. There also needs to be an immediate increase in your problem solving of incorrect work flow through out the the department. There needs to be an improvement in the communication with the previous Supervisor for potential problems that may have occurred during the shift or even any issues that you find during your walk through, these need to be addressed immediately. You are being issued a Personnel Notice for Poor Job Performance.

**ACTION TAKEN**
Covered the above with Mike. Asked them if they needed any other guidance or assistance. Failure to meet these goals and guidelines immediately will result in Corrective Action which may include removal from your job.

**DISTRIBUTION**
- [ ] COST DEPT.
- [ ] DEPT. FILES
- [ ] INDUSTRIAL RELATIONS
- [ ] OFFICE MANAGER
- [ ] PAYROLL DEPT.
- [ ] HUMAN RESOURCES DEPT.
- [ ] VICE PRESIDENT
- [ ] GENERAL MANAGER
- [ ] MANAGER
- [ ] ASST. MANAGER
- [ ] DEPT. MANAGER
- [ ] SUPPLY ROOM

RECOMMENDED BY
DEPARTMENT MANAGER   2.16.06
ASSOCIATE (if necessary)
OTHER
SIGNATURE   DATES
Mike Ethridge   2-16-06

Lee/WPH - 0566