IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
CLAUDE GENE LEE, SR.,         )
                              )
    Plaintiff,                )
                              )
                              )     CIVIL ACTION NO.
    v.                        )      1:06cv874-MHT
                              )          (WO)
WESTPOINT HOME, INC.,         )
                              )
    Defendant.                )
```

OPINION

In this lawsuit, plaintiff Claude Gene Lee, Sr., an African-American, claims that defendant WestPoint Home, Inc. removed him from his supervisory position and subsequently terminated him because of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e to 2000e-17 ("Title VII"), and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981"). This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

This case is currently before the court on WestPoint Home's motion for summary judgment. For the reasons that follow, summary judgment will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

From February 1977 until his termination in March 2006, Lee worked for WestPoint Home's Abbeville plant,

which produced finished bed linens. He worked primarily in the packing department. In November 2001, due to his positive work evaluations and dedication--demonstrated by his perfect attendance record for over 20 years--he was promoted to packaging department third shift supervisor. This position required Lee to manage a substantial number of employees.[1] Until December 2005, Lee had never had an evaluation finding that he was failing to meet performance requirements.

In August 2005, the assets of WestPoint Stevens, Inc., Lee's original employer, were sold, pursuant to § 363 of the bankruptcy code, to WestPoint Home. Following the change in ownership, WestPoint Home began to undertake a number of operational changes designed to make the company more successful. The Abbeville plant became the center of all fabrication and distribution

---

    1. In his complaint, Lee states that he supervised between 65 and 80 subordinate employees. Compl. (Doc. No. 1), at ¶ 5. In his brief opposing summary judgment, however, he claimed to supervise only 35-40 employees. Pl.'s Br. (Doc. No. 19), at 2.

functions and, as such, came under particularly close scrutiny from the company's management. During its evaluation of the plant, WestPoint Home found that Lee failed to perform key functions of his job, including enforcing proper work procedures, disciplining employees for poor performance, and communicating with other supervisors and his department manager on work-related matters.

After giving Lee notices of his poor performance and seeing no improvement, WestPoint Home removed Lee from his supervisory position.[2] WestPoint Home then offered him its only available alternative position, the non-

---

2. WestPoint Home issued its first personnel notice of poor job performance on December 12, 2005. On January 25, 2006, Lee received his yearly evaluation listing his rating as "fair." Lee's next personnel notice of poor job performance was issued on February 15, 2006. He then received a corrective-action report on March 8, 2006, from then department-manager Michael Alford, notifying Lee that he would be removed from his position if he failed to make immediate improvements. Such immediate improvements did not ensue, and Alford issued a second corrective-action report on March 11. See Decl. of Brent Murphy (Doc. No. 14), at 3; Defs.' Resp. to Court's Order (Doc. No. 52), at 2.

supervisory job of "set order puller." Lee declined the offer because of the job's low pay and physical demands. Because he opted not to accept the offer of further employment, WestPoint Home deemed his leaving the company to be a voluntary termination. His termination became effective on April 15, 2006, and he was replaced by a white employee.

Following the filing of a timely administrative complaint with the Equal Employment Opportunities Commission and receipt of a right-to-sue letter in response, Lee brought this suit. The Abbeville plant is currently scheduled to close most, but not all, operations.[3]

---

3. Defs.' Mot. for Leave to File a Reply Br. (Doc. No. 41), at 2. When WestPoint Home originally filed for summary judgment, the Abbeville plant was scheduled to close altogether on August 31, 2007.

## III. DISCUSSION

### A. McDonnell Douglas Burden-Shifting Framework

Under Title VII, it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2 (a)(1). Section 1981 similarly prohibits race discrimination in employment. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1333 (11th Cir. 1998). Lee claims discriminatory demotion and discharge based on race, in violation of those statutes. Therefore, Lee must prove that WestPoint Home acted with discriminatory purpose. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); Williams v. Motorola, Inc., 303 F.3d 1284, 1293 (11th Cir. 2002).

A plaintiff may prove discriminatory intent by producing circumstantial evidence. Standard, 161 F.3d at

1330. A circumstantial-evidence case proceeds according to the familiar burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and its progeny.[4]  <u>Standard</u>, 161 F.3d at 1331.  First, the plaintiff must establish a prima-facie case, which creates an inference of discrimination.  <u>Id.</u> at 1330. Next, the employer must produce a legitimate, nondiscriminatory reason for its actions; if it does so, the burden shifts back to the plaintiff to produce "sufficient evidence to find that the employer's asserted justification is false" and, in reality, a pretext for unlawful intentional discrimination. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 148 (2000).

Although the establishment of a prima-facie case shifts the burden of production to the employer, it does not reallocate the burden of persuasion:  the plaintiff

---

    4. This burden-shifting analysis, while most familiar in the Title VII context, is also used for claims under 42 U.S.C. § 1981. See <u>Shields v. Fort James Corp.</u>, 305 F.3d 1280, 1282 (11th Cir. 2002); <u>Standard v. A.B.E.L. Services, Inc.</u>, 161 F.3d 1318 (11th Cir. 1998).

always bears the burden of persuasion to prove by a preponderance of the evidence that the employer acted with discriminatory intent. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); Standard, 161 F.3d at 1331. At the summary-judgment stage, the plaintiff may survive by providing a prima facie case and evidence sufficient for a jury to find that the employer's proffered explanation is false. Reeves, 530 U.S. at 147-48.

B. The Framework as Applied to
Lee's Demotion Claim

1. Prima-facie case

Pursuant to the McDonnell Douglas framework, the court begins its discriminatory-discharge analysis by determining whether Lee can establish a prima-facie case. One way for the plaintiff to make such a case is to show that he (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse-employment action, and (4) was replaced by someone outside the

protected class. Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004). The court will assume that Lee has established a prima-facie case.

### 2. WestPoint Home's burden to show legitimate reason for demotion

Lee's prima-facie case raises an inference of discrimination, so the burden of production shifts to WestPoint Home to articulate a legitimate and nondiscriminatory reason for having removed him from his supervisory position. The defendant does not bear the burden of proof on this issue and need only produce admissible evidence of the legitimate, nondiscriminatory reason. Hicks, 509 U.S. at 507. WestPoint Home easily meets this "exceedingly light burden," Holifield, 115 F.3d at 1564, with its assertions of unsatisfactory job performance, which are supported by the record.[5] Indeed,

---

5. See Decl. of Brent Murphy (Doc. No. 14), at 2; Decl. of Frank Major, III (Doc. No. 14), at 2-3.

three different supervisors, one of them black, found Lee's work performance lacking.

### 3. Lee's burden to show pretext

At this point, WestPoint Home has rebutted Lee's prima-facie case and Lee thus has the burden to prove that poor job performance, WestPoint Home's stated reason for removing him from a supervisory position, is pretextual for intentionally demoting him because of his race. Although Lee has the burden of proof for the case overall, WestPoint Home, as the summary-judgment movant, has the burden to show the absence of any genuine issue as to "the ultimate fact of intentional discrimination." Hicks, 509 U.S. at 511. In order for Lee to survive summary judgment now that WestPoint Home has produced a satisfactory legitimate reason for Lee's demotion, the court must find that a factfinder could nevertheless infer that the pretextual reason is false. See Reeves, 530 U.S. at 146-49.

10

Lee has presented no evidence that could support a reasonable inference by a jury that WestPoint Home's stated reason for demoting Lee, poor job performance, was false. His only shreds of evidence come from attempts to show both differential treatment of similarly situated white employees and a pattern of race-based employment actions. Both attempts fail.

Lee hints at a similarly situated analysis by noting that the two white shift supervisors, whose rate of production was inferior to his, retained their supervisory positions.[6] But WestPoint Home never contended that the output of Lee's shift was inadequate. Instead of using a solely quantitative approach, WestPoint Home had qualitative concerns regarding Lee's capacity to act as a leader who could implement the company's planned changes. While the white supervisors did have lower raw production numbers than Lee and did also receive complaints about their performance, they

---

6. See Pl.'s Br. (Doc. No. 19), at 6.

11

cannot be considered similarly situated because they did not receive reprimands about their leadership comparable to those received by Lee.[7]  One of Lee's supervisors, Frank Major (who is African-American), went so far as to declare Lee the "lowest-performing" and "least effective leader and manager" in the packaging department.  See Pl.'s Br. (Doc. No. 19), at 7.[8]  Despite Lee's insistence

---

7.  In December 2005, Lee alone received a written personnel notice of poor job performance.  In the supervisors' January 2006 performance evaluations, Lee was rated "fair" and received comments expressing concerns about the quality of his leadership, while the white supervisors were rated "meets expectations" and did not receive such comments.  Additionally, all three supervisors' evaluations--and not just Lee's--were altered to lower their ratings after Major met with the plant manager.  Defs.' Resp. to Court's Order (Doc. No. 52), at 2, 3 n.1.  In February 2006, all three supervisors received personnel notices of poor job performance.  These three notices were nearly identical, except that the white supervisors were given notice that their production efficiency was below 100%, while Lee's was not.  The notices reprimanded all three supervisors for performance on the identical management tasks.  Finally, in March 2006, Lee received two corrective-action reports based on an incident that took place on his shift, while the white supervisors received none.

8.  Lee claims that Major's assessment is both incorrect and contrary to his prior evaluations of Lee,
(continued...)

12

to the contrary, evaluations of efficacy and performance can be based on considerations other than output alone.

Lee's second attempt to show pretext consists of an effort to show race-based patterns of employment action. This theory, however, is based on an improper selective mining of WestPoint Home's recent history. As evidence of race discrimination, Lee refers to the demotion of two other black employees at the same time as Lee. But, as WestPoint Home shows, black employees were also promoted at the same time Lee was removed from his supervisory position. Additionally, the white male plant manager, who had been with the company since 1976 and been a manager since 1992, was also removed from his position during WestPoint Home's purge of ineffective managers. He was replaced by a black man. It is thus clear that during WestPoint Home's period of company reorganization

---

8. (...continued)
but offers no evidence that any change of heart was motivated by race.

and upheaval, all employees, black and white, were subject to promotion and demotion on the basis of their ability to implement the company's planned changes.  In the absence of even the faintest hint of a racial motive, these employment actions bear no relation to Lee's claim that WestPoint Home intentionally discriminated based on race.

   Lee is therefore unable to demonstrate the existence of a genuine issue of material fact, sufficient to withstand summary judgment, that would allow a reasonable juror to infer that his demotion was racially motivated and that poor job performance was merely pretextual.  It is evident that Lee "disagree[s]" with WestPoint Home's determination that his job performance was inadequate.  Pl.'s Br. (Doc. No. 19), at 5.  But "[q]uarreling with [the employer's] reason is not sufficient" to prevent WestPoint Home from successfully articulating a legitimate and nondiscriminatory reason for its actions.  <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1088 (11th

14

Cir. 2004). Even if Lee has indeed been treated unfairly, he cannot survive summary judgment under Title VII and § 1981 without a showing that his adverse-employment action was actually based on race.

### C. The Framework as Applied to Lee's Termination Claim

While he does not allege it clearly, Lee also seems to claim that WestPoint Home unlawfully terminated him because of his race. But the evidence unequivocally demonstrates that Lee's termination claim depends on his demotion claim; because his demotion claim fails, so too does his termination claim.

For the foregoing reasons, the court will grant WestPoint Home's motion for summary judgment.

An appropriate judgment will be entered.

DONE, this the 11th day of October, 2007.

          /s/ Myron H. Thompson
     UNITED STATES DISTRICT JUDGE